IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC BLACKMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19 C 0767 |
| ) | |
| CITY OF CHICAGO, Chicago Police ) | Judge Virginia M. Kendall |
| Officers GREGORY JONES, JAMES ) | |
| SANCHEZ, and EUGENE SCHLEDER, and ) | |
| other as-yet unidentified employees of the ) | |
| City of Chicago, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE §1983
CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS**

Plaintiff Eric Blackmon ("Plaintiff" or "Mr. Blackmon"), by and through his attorneys, respectfully submits this Response in Opposition to Defendant City of Chicago's Motion to Bifurcate § 1983 Claims and to Stay Discovery and Trial on Those Claims (Dkt. 71, "Mot.") and states as follows:

**INTRODUCTION**

Mr. Blackmon was wrongfully convicted and served over fifteen years in prison for the murder of Tony Cox. There was no physical or forensic evidence linking him to the crime, and he always maintained his innocence. He was convicted based on false witness statements, faulty lineups, false testimony, and other police misconduct. As alleged in the Amended Complaint, Mr. Blackmon's wrongful conviction directly resulted from Defendant City of Chicago's (the "City") policies and practices that allowed the Defendant Officers to violate his rights with impunity.

1

The City now seeks to needlessly delay and complicate this suit by requesting that the Court (1) bifurcate Mr. Blackmon's *Monell* claims against the City, and (2) stay discovery and trial of those claims until the resolution of all claims against the Defendant Officers. The City's motion is based on the flawed premise that disposition of the claims against the Defendant Officers would "practically end this litigation." (Mot. at 7.) The City fails to address, however, a material difference between this case and the cases it cites in support of its position. Here, the Defendant Officers have asserted absolute immunity on Mr. Blackmon's false testimony claims. (Defs.' Answer to Pl.'s First Am. Compl. ("Defs.' Answer", Dkt. 75) at 30.) Their absolute immunity would preclude Mr. Blackmon from litigating this deprivation of constitutional rights in a bifurcated case against solely the Defendant Officers. The claim would necessarily require a second round of litigation and a second trial against the City.

The City also relies on blanket assertions of excessive burdens on the parties and the Court's resources. But the City fails to show how Mr. Blackmon's *Monell* discovery requests are unduly burdensome. In fact, thus far Plaintiff's counsel and the City's counsel have been meeting and conferring to reach agreement on the scope of the *Monell* discovery in response to certain objections by the City. The City has not shown a lack of good faith cooperation with Plaintiff's counsel in these negotiations, or any other specific issues supporting the need for bifurcation in this suit. The City's motion is therefore premature and unsupported, given that the parties are continuing to negotiate such matters and come to a resolution on those issues.

In recognition of the legal challenges the City faces with its bifurcation arguments, the City proposes, in the alternative, a "Limited Consent to Entry of Judgment" ("Limited Consent," Ex. A to Mot., Dkt 71-1), and incorrectly asserts that the consent negates the need to further litigate Mr. Blackmon's *Monell* claims. The proposed Limited Consent, however, only addresses the qualified

2

immunity defense, not absolute immunity. Furthermore, the proposed Limited Consent offers little benefit to Mr. Blackmon, deprives him of his right to be the master of his action and his claims, and does not address the important non-monetary considerations related to the pursuit of his *Monell* claims.

In nearly every § 1983 suit involving a wrongful conviction and a *Monell* claim, the City's consistent refrain is that bifurcation must be granted over discovery and trial. This strategy is not about saving time or costs, or "streamlining" this type of litigation. Instead, the City's clear goal is to prevent any civil-rights plaintiff from having even the *opportunity* to hold the City accountable for its actions in causing scores of wrongful convictions. In pursuit of that goal here, the City intends to use bifurcation to make it more costly and time consuming for Mr. Blackmon to litigate his claims against the City. This Court should reject this attempted strategy.

## **LEGAL STANDARD**

A court has "considerable discretion" under Rule 42(b) of the Federal Rules of Civil Procedure in deciding whether to divide claims and issues into separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b); *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Courts have similar discretion to stay discovery on *Monell* claims, but such relief is only granted for "the most obviously compelling reasons." Fed. R. Civ. P. 26(b) & (d), advisory committee's note to 1970 amendment; *Warren v. Dart*, No. 09 CV 3512, 2012 WL 1866372, at *2-3 (N.D. Ill. May 22, 2012).

As the proponent of bifurcating the *Monell* claims, the City bears "the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 837 (N.D. Ill. 2006). The majority of courts in this district "hold[] that bifurcation is now heavily disfavored." *See*

*Awalt v. Marketti*, No. 11 CV 6142, 2012 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012). Bifurcation is improper where it would "prejudice the non-moving party." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007).

## ARGUMENT

Since litigating a case in a piecemeal fashion is likely to cause delay, bifurcation is the exception and not the rule. *A.L. Hansen Mfg. Co. v. Bauer Prods., Inc*., No. 03 CV 3642, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004); *Bouto v. Guevara, et al*., Case No. 19 CV 2441, 2020 WL 635974, at *1 (N.D. Ill. Feb. 11, 2020) (the weight of Seventh Circuit authority holds that bifurcation is heavily disfavored in civil rights suits based on wrongful convictions). The City's policies and practices led to the violations of Mr. Blackmon's constitutional rights and ultimately to his wrongful conviction for a crime he did not commit. Delaying Mr. Blackmon's ability to move forward with his *Monell* claims and resolve this matter substantially prejudices him and his goals in this litigation. As discussed below, the City's motion should be denied.

**I.  The Disposition of the Claims Against the Defendant Officers Will Not End This Litigation.**

The City incorrectly asserts that disposition of the claims against the Defendant Officers will end this litigation. But the City fails to address Mr. Blackmon's false testimony claim related to Defendant Sanchez's testimony at Mr. Blackmon's trial and fails to explain how this claim could be addressed without a second round of litigation. The City cannot do so because there is no such scenario. Specifically, Defendant Sanchez testified at Mr. Blackmon's criminal trial that he was told by the victim's family that Mr. Blackmon was involved in the victim's murder, and that the family members "verified" that Mr. Blackmon was responsible for the murder. (First Am. Compl., Dkt. 73, ¶¶ 70-72.) There is no support for this testimony in the investigative file, and records of the Defendant Officers' interviews of Mr. Cox's family members contradict this testimony.

The Defendant Officers have asserted absolute immunity for any testimony given in Mr. Blackmon's underlying criminal case. (Defs.' Answer at 30); *see Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (a police officer is immune from a damages claim for giving perjured testimony at a criminal trial). Given the absolute immunity defense, this case necessitates litigating a claim against the City for a constitutional deprivation for which the Defendant Officers *cannot* be liable.

The false testimony supports Mr. Blackmon's *Monell* claim. As one component of that claim, Mr. Blackmon will prove that situations where officers give false testimony—such as the testimony which led to his wrongful conviction—are far from isolated incidents. Instead, numerous similar incidents have resulted from long-standing issues caused by the policies and practices of the City. Mr. Blackmon will prove that this type of misconduct has flourished due to the City's failure to take measures, including important disciplinary measures, to prevent such abuses and violations. (*See* First Am. Compl. ¶¶ 87-93.) The City's failure to discipline officers like Defendant Sanchez has led to a culture where "officers . . . affirmatively lie in interviews and testimony" with no fear of accountability. U.S. Department of Justice, *Investigation of the Chicago Police Department*, at 75 (Jan. 13, 2017), *available at* https://www.justice.gov/opa/file/925846/download (last visited Feb. 18, 2020) ("DOJ Report").[1] It is plausible, then, that the City could be found liable for the false testimony at trial even while the Defendant Officers are immune from claims related to the same conduct.

The City relies on *Ezell v. City of Chicago*, No. 18 C 1049, 2019 WL 3776616 (N.D. Ill. Aug. 12, 2019) in support of its bifurcation motion. (Mot. at 3, 5-7.) However, the facts of *Ezell* are distinguishable. First, contrary to the City's suggestion (Mot. at 2 and 5), the claims in *Ezell*

---

[1] Among the findings in the DOJ Report was that the City's "deficient accountability systems contribute to CPD's pattern or practice of unconstitutional conduct," including creating a culture where officers "do not believe there is much to lose by lying." (DOJ Report 46, 75.)

5

were not similar in every material respect to the claims in this case. *Ezell* was not a false testimony case. Moreover, this Court found in *Ezell* that "Plaintiffs' claims for compensatory damages can be resolved without ever delving into the *Monell* issues." 2019 WL 3776616 at *4. That is not the situation here. Because the Defendant Officers may have absolute immunity for their false testimony, Mr. Blackmon's claims related to false testimony cannot be resolved without addressing the City's liability for this constitutional violation.[2] Finally, the City relies on *Ezell* to argue that the Limited Consent it has proposed in this case supports bifurcation. (Mot. at 6-7 (also citing *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1081 (N.D. Ill. 2018)).) But this is not a case where a consent to the entry of judgment would "practically end the litigation," (Mot. at 7), because as discussed below, the Limited Consent offered by the City in this case does not address absolute immunity.[3]

---

[2] This is also not a case in which Detective Sanchez's false testimony was merely a reiteration of fabricated information set forth in a police report. *See, e.g.*, *Avery v. City of Milwaukee*, 847 F.3d 433, 441-43 (7th Cir. 2017) (finding that an officer's fabrication of evidence, about which the officer later testifies at trial, is actionable as a due process violation despite the rule of absolute immunity for the testimony itself). There is no police report that contains the false information to which he testified at Mr. Blackmon's trial. Accordingly, the grounds that have defeated claims of absolute immunity in prior cases do not exist here. *Id.*; *see also Williams*, 315 F. Supp. 3d at 1077 (absolute prosecutorial immunity did not extend to the fabrication of evidence prior to the initiation of judicial proceedings).

[3] In addition to *Ezell*, the City relies on *Andersen v. City of Chicago*, No. 16 C 1963, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016) and *Williams,* 315 F. Supp. 3d 1060, to support its motion. But these cases are distinguishable for the same reasons discussed above. Neither case involves allegations of false trial testimony by police officers. Nor do the cases address the impact of absolute immunity on claims related to false testimony, or whether those claims can be resolved absent a determination of the City's liability for the constitutional violation stemming from the false testimony. And as in *Ezell*, the Limited Consent offered in both cases addressed the individual defendants' qualified immunity defense, not a defense of absolute immunity.

**II.     Bifurcating the *Monell* Proceedings Will Create Duplication, Delay, and Disputes.**

The City repeatedly asserts in its motion that bifurcation will serve judicial economy through "streamlined" discovery and avoiding the costs associated with litigating the claims involving the City's policies and procedures. As a threshold matter, the City's argument assumes that efficiencies will be gained if the second round of litigation never takes place. Of course, the opposite (and more likely) scenario is true for the reasons addressed above: that the parties engage in two trials, with two sets of discovery tracks, with multiple rounds of briefing on issues spanning both phases of the case. Duplicative, piecemeal litigation that would result from bifurcation here will not promote judicial economy.

The risk of unnecessary duplication is particularly notable in this case, where the evidence regarding the *Monell* claims and the claims against the Defendant Officers significantly overlap. Given the close connection between the evidence for the two sets of claims, concerns regarding efficiency and judicial economy weigh in favor of litigating the claims simultaneously, as is standard in these types of cases. *See Cadle v. City of Chicago*, 15 C 4725, 2015 WL 6742070, at *3 (N.D. Ill. Nov. 2, 2015) (a stay of discovery and bifurcation of a *Monell* claim is inefficient, requires discovery to be conducted seriatim, and delays the ultimate adjudication of the case); *Awalt*, 2012 WL 1161500, at *10 (cost of defense considerations "dissipate if it is determined that the parties may have to litigate the *Monell* claims irrespective of the bifurcation decision"); *Terry v. Cook Cty. Dep't of Corr.,* No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (the City's proposal could require "two rounds of discovery, two trials to prepare for, and two trials that would include much redundant evidence"); *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007) ("[A] stay of *Monell* discovery will achieve cost savings

7

only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date.").

Finally, bifurcation will likely create problems of the efficient management of this case, leading to disputes requiring judicial intervention to undertake what can be an impossible task—separating *Monell* discovery from non-*Monell* discovery. *See Ott v. City of Milwaukee*, 09-C-870, 2010 WL 5095305, at *3 (E.D. Wis. Dec. 8, 2010) (finding it "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims").

### III. The City Has Not Established That the Burden Imposed By *Monell* Discovery Is Disproportionate to the Needs of the Case.

In addition to seeking to bifurcate the *Monell* claim, the City also requests a stay of *Monell* discovery, arguing that Plaintiff's discovery requests are "colossal" in scope and will impose unduly "burdensome, expensive, and time-consuming" discovery on the City. (Mot. at 2, 9-10.) The City, however, offers no support for that assertion other than simply listing certain of Mr. Blackmon's discovery requests. The City does not explain why or how locating responsive information would be excessively costly or time-consuming. This type of "non-specific assertion of burden" is routinely rejected by courts and does not satisfy the City's burden to justify bifurcation. *See Cadle*, 2015 WL 6742070, at *2 (quoting *Cadiz*, 2007 WL 4293976, at *3). Even if this type of vague assertion was permissible, the City likely overstates the burden imposed because the City has surely collected and produced many of the relevant documents in other cases. *See id.* ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation.").

8

Moreover, burden alone does not justify bifurcation. *See Cadiz*, 2007 WL 4293976, at *3 (explaining that if increased burden "alone were sufficient to require bifurcation, then bifurcation would be automatic"). Instead, courts must look to whether the burden imposed, however great, is disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). In doing so, courts assess, among other things, "the importance of the issues at stake in the action, the amount in controversy, [and] the parties' relative access to relevant information[.]" *Id*. The importance of the issues at stake includes "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (quoting 1983 advisory committee's note). "Thus the rule recognizes that many cases in public policy spheres . . . may have importance far beyond the monetary amount involved." *Id*.

The issues at stake here are of the upmost importance: Mr. Blackmon has lost more than a decade and a half of his life due to the unconstitutional conduct of the City and its employees. The claims involve allegations of pervasive misconduct within the Chicago Police Department ("CPD")—an entity that is entrusted with protecting and serving the citizens of Chicago. The monetary value of the claims is substantial. *See, e.g*., *Patrick v. City of Chicago*, JVR No. 1706280004, 2017 WL 2928283 (N.D. Ill. Apr. 12, 2017) (recent $13.3 million verdict in favor of Deon Patrick against the City of Chicago).

There are significant non-monetary considerations at issue here as well, such as the need to encourage the municipality to reform patterns and practices that lead to constitutional violations and the deterrent effect of a judgment naming the municipality based on its policies and customs. *See Rodriguez v. City of Chicago*, No. 18-CV-7951, 2019 WL 6877598, at *2 (N.D. Ill. Dec. 17, 2019) (noting that numerous courts have recognized weighty non-monetary considerations including institutional reform, deterrence, and public awareness). This is particularly true with

regard to the City's failure to hold accountable those police officers who provide false testimony at trial. While the DOJ Report found that officers "affirmatively lie in interviews and testimony" without fear of retribution, (DOJ Report at 75), Mr. Blackmon is not aware of any remedial measures the City has implemented to address this problem in recent years. Indeed, it appears that the City is still not tracking citizen complaints of officers falsely testifying, which suggests that officers are still not being disciplined for such conduct, and that the City is still not evaluating the frequency of such conduct. The complaint register categories produced by the City in this case, which show the categories of officer misconduct complaints that the CPD tracks and investigates, do not appear to provide categories for tracking false trial testimony. This remains true despite findings that such problematic conduct is systemic and long-standing in the CPD. A finding of liability on Plaintiff's *Monell* claim, therefore, would promote deterrence of a still existing misconduct problem which the City has yet to take adequate steps to remedy.

Additionally, any burden here related to litigating Mr. Blackmon's *Monell* claims is proportional to the complexity of the claims and the substantial stakes of this case as outlined above. The parties have disclosed dozens of fact witnesses, both sides likely will have expert witnesses, and the parties have produced thousands of documents (and are continuing to produce additional documents), regardless of the *Monell* claims. The City has hired an experienced law firm for its representation in this significant case. Any incremental burden caused by *Monell* discovery requests will not have disproportionate impact on what is already a significant, complex matter.

Finally, the City's assertions regarding burden are premature given that the City is in the process of conferring with Mr. Blackmon's counsel in an attempt to ease that burden. Before bringing contentions of undue burden to the Court, the parties should make a good-faith attempt

to resolve any legitimate issues through completing the meet and confer process here. If counsels' discussions fail to produce a solution, the parties can file appropriate discovery motions at a later date. Several courts within this district have recognized that this is the appropriate way to deal with allegedly burdensome *Monell* requests. *See, e.g.*, *Carter v. Dart*, No. 09 C 956, 2011 WL 1466599, at *5 (N.D. Ill. Apr. 18, 2011) (denying a motion to bifurcate, noting that "to the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary"); *Terry*, 2010 WL 2720754, at *3 (same); *Cadiz*, 2007 WL 4293976, at *3 (same).

## IV.     Prejudice Concerns Do Not Justify Bifurcation.

The City argues at length that it and the named Defendant Officers will be prejudiced by proceeding in a single trial because the jury will hear evidence about misconduct in which they were not involved. (Mot. at 12-13.) The City's argument, however, lacks merit because any potential prejudice arising from the introduction of evidence related to other suggestive lineups and false testimony can be mitigated by appropriate evidentiary rulings at trial. *See Cadle*, 2015 WL 6742070, at *3 (finding the City's arguments regarding prejudice to the defendant officers "premature" and "unpersuasive" because the court could utilize evidentiary tools to limit prejudice); *Giles v. City of Chi.*, No. 12-cv-6746, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2013) (denying bifurcation because "any potential prejudice that might arise from a unitary trial can be mitigated through the use of limiting instructions, motions in limine, and the Rules of Evidence"); *Rodriguez v. City of Chi.*, No. 17 CV 7248, 2018 WL 3474538, at *4 (N.D. Ill. July 19, 2018) (same); *Estate of Loury by Hudson v. City of Chi.*, No. 16-CV-04452, 2017 WL 1425594, at *4 (N.D. Ill. Apr. 20, 2017) (same).

Furthermore, the City's concerns are premature and too speculative at this stage in the litigation. Courts have noted that determining prejudice to defendants is better dealt with closer to trial, when the evidence and issues to be tried are more fully developed. *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015); *Love v. City of Chicago*, 363 F. Supp. 3d 867, 875 (N.D. Ill. 2019); *Jackson v. City of Chicago*, Case No. 14 C 6746, 2017 WL 8199322, at *3 (N.D. Ill. Dec. 12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and *Monell* claims together] is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims.").

Finally, any analysis of prejudice must also examine the prejudice to Mr. Blackmon in delaying the adjudication of his *Monell* claims. Mr. Blackmon has a right to select the claims he wishes to pursue. Requiring Mr. Blackmon to pursue two trials will substantially increase the costs of litigation and the use of judicial resources by the end of the second trial. The parties will also likely engage in extensive disputes in the first litigation phase about whether discovery or other matters are subject to the stay, which will involve a significant amount of time and effort by the parties and the Court. In short, bifurcation will add unnecessary complexity, confusion, and cost to the discovery process and the ultimate adjudication of Plaintiff's claims.

## V. The Proposed Limited Consent Does Not Moot Mr. Blackmon's *Monell* Claims.

As an alternative attempt to avoid litigating the *Monell* claims, the City proposes a "Limited Consent to Entry of Judgment" against it, which it contends will render Mr. Blackmon's *Monell* claims moot. (Mot. at 7-14-15; Limited Consent, Mot. Ex. A.) The proposed Limited Consent fails to achieve the City's desired effect. The proposed Limited Consent is not contemplated by the Federal Rules of Civil Procedure and no basis in law exists for the City to use the proffered

12

document to deny Mr. Blackmon his right to litigate viable *Monell* claims. It is also likely that the Limited Consent provides Mr. Blackmon nothing more than an illusory offer, as indemnity for a judgment here is already provided by statute under 745 Ill. Comp. Stat. 10/9–102.

Paragraph 4 of the Limited Consent expressly denies any and all of Mr. Blackmon's *Monell* allegations in this suit and limits his recovery to only situations in which the finder of fact finds one of the Defendant Officers who remains as a defendant through the conclusion of trial is liable to Mr. Blackmon. (Mot. Ex. A ¶ 4.) Paragraph 5 specifically provides that if no underlying constitutional violation is found against any of the Defendant Officers, the Court will automatically enter judgment in favor of the City. (*Id.* ¶ 5.) These provisions confirm that two trials would still be necessary with bifurcation to address Mr. Blackmon's false testimony claims because the Limited Consent does not address absolute immunity.

The Limited Consent also fails to account for the important non-monetary interests Mr. Blackmon seeks to protect by pursuing a cause of action under *Monell*. It is undisputed that *Monell* claims "seek[] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *Giles,* 2013 WL 6512683, at *3 n.1 (rejecting the City's proposed consent to entry of judgment as an impermissible "attempt[] to circumvent the public policy goals of *Monell* claims by insulating the City from litigating and accepting responsibility if their practices and policies result in constitutional injuries"); *Rodriguez*, 2019 WL 6877598, at *3 (similar).

Furthermore, as another court in this district has discussed, a judgment against a municipality carries a particular weight that is different than a judgment against an individual officer, and can be a stronger "catalyst for change" since it holds that entity responsible, as well as alerts the municipality and its citizenry to the issue. *Estate of McIntosh*, 2015 WL 5164080, at

13

*10. The Limited Consent should not be used to take away Mr. Blackmon's right as a plaintiff to be the master of his action and control the manner in which he gathers evidence and pursues his claims. The City's attempt to evade *Monell*'s public policy goals and avoid admitting liability should be rejected.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court deny the City's motion to bifurcate Plaintiff's *Monell* claims and to stay discovery and trial on those claims.

Dated: February 18, 2020             Respectfully submitted,

/s/ *Ronald S. Safer*
Ronald S. Safer
Valarie Hays
John K. Theis
Sarah Finch
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700 (tel)
(312) 471-8701 (fax)
rsafer@rshc-law.com
vhays@rshc-law.com
jtheis@rshc-law.com
sfinch@rshc-law.com
*Attorneys for Plaintiff Eric Blackmon*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2020, I caused the foregoing **Plaintiff's Response in Opposition to Defendant City of Chicago's Motion to Bifurcate § 1983 Claims and to Stay Discovery and Trial on Those Claims** to be filed and served on counsel of record via the CM/ECF system.

                                                  */s/ Ronald S. Safer*