UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eric Blackmon, | |
| *Plaintiff,* | No. 19 CV 767 |
| v. | Judge Lindsay C. Jenkins |
| City of Chicago, *et al.,* | |
| *Defendants.* | |

ORDER

Eric Blackmon was convicted of first-degree murder for the July 4, 2002, shooting death of Tony Cox based largely on the testimony of two eyewitnesses, Lisa McDowell and Frencshun Reece. Cox was murdered outside of Fat Albert's restaurant on South Pulaski Road in Chicago while standing outside the restaurant with its owner, Richard Arrigo. Blackmon denies that he was one of the shooters, maintaining that he was hosting a barbeque at the time of the murder. After a bench trial in 2004, Blackmon was convicted and sentenced to 60 years' imprisonment.

Following a lengthy and ultimately successful habeas corpus challenge, Blackmon's conviction was vacated and the state declined to retry him. This lawsuit followed. Blackmon sued the City of Chicago and three police detectives, Defendants Gregory Jones, James Sanchez and Eugene Schleder. He brings claims under 42 U.S.C. § 1983 and state law against the detectives and a *Monell* claim and derivative state law claims against the City. [Dkt. 197 at 1.] Following summary judgment and a successful interlocutory appeal on a qualified immunity question, *Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025), the following claims remain for trial: Blackmon's Fourteenth Amendment due process claim arising from (a) detectives allegedly fabricating Reece's identification of Blackmon as the shooter and coercing her to testify to that identification at the criminal trial; and (b) suppression of Reece's exculpatory or impeaching statements related to that fabrication (Count One); conspiracy (Counts II and VIII); failure to intervene (Count III); and intentional infliction of emotional distress (Count VII).

Before the court are Plaintiff's [Dkt. 261] and Defendants' [Dkt. 263] motions *in limine* (MILs).[1] As explained below, the court rules on some of the motions in full, others in part, and defers ruling on others.

---

[1]     Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

<small>PLAINTIFF'S MOTIONS</small>

## Plaintiff's MIL No. 1: Permit Plaintiff to Treat Certain Witnesses as Adverse

Plaintiff seeks to treat former CPD officers John Pellegrini, Michael Cronin and Williams Schober as adverse witnesses, arguing that leading questions should be allowed because they were employed by the City of Chicago in 2002 and played a key role in the Cox murder investigation. Defendants see things differently, arguing that because these witnesses are no longer employed by the City and played only a minor role in the investigation, leading questions should be prohibited.

Federal Rule of Evidence 611 allows a party to address leading questions to a "hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). Current employees are often treated as adverse witnesses to the employer's opposing party, as they are considered to be identified with an adverse party. *Ellis v. City of Chi.*, 667 F.2d 606, 613 (7th Cir. 1981) (holding that current officers of the defendant city are adverse witnesses to the plaintiff). A witness is most likely to be treated as adverse when he or she was employed at the time of the incident in question and had a hand in the incident that resulted in suit. See *Ratliff v. City of Chi.*, 2012 WL 7993412, at *1 (N.D. Ill. Nov. 20, 2012). Even when that involvement is tangential, an employee of a city defendant may be considered adverse. *Id.*

The CPD witnesses' former employment with the City qualifies them for treatment as witnesses adverse to Plaintiff under Rule 611. Pellegrini was Defendant Sanchez's partner and he assisted with the Cox murder investigation. Cronin was also assigned to the investigation as a gang specialist and interviewed at least one eyewitness, Lisa McDowell. Schober arrested Plaintiff and signed the relevant arrest report. Because these witnesses were employed and involved with the investigation, adverse treatment is appropriate.

Plaintiff also seeks to treat the two ASAs, Rimas Cernius and Ken Fiedler as adverse. Though neither of these ASAs were employed by the City, Plaintiff argues that both were intimately involved with the criminal case. The court agrees. Though neither ASA participated in the investigation, there is no question that both "had a hand" in the incident that resulted in this suit. ASA Fiedler was the felony review unit prosecutor who approved the first-degree murder charge after consulting with the Defendants. Likewise, ASA Cernius prosecuted Plaintiff at his criminal trial, making him, quite literally, adverse. Plaintiff's MIL No. 1 is granted.

## Plaintiff's MIL No. 2: Exclude Autopsy Materials

Plaintiff moves to bar the autopsy report and photographs of Cox as irrelevant and unfairly prejudicial under Federal Rules of Evidence 401 and 403. He argues that these materials are not relevant given the issues that remain for the jury to decide, and because the fact and manner of Cox's death is not in dispute. Defendants argue the materials are relevant to their "ability to establish what was discovered at the

2

crime scene and the investigative steps" that followed, including Reece's identification of Plaintiff as one of the shooters. [Dkt. 277 at 5.] They also argue the materials are relevant to fabrication and suppression because victim photos were considered by the jury at the criminal trial.

The autopsy materials clear the low bar for relevance. Fed. R. Evid. 401 ("Evidence is relevant where it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action.") While relevant evidence is generally admissible, the court may exclude evidence whose probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. This analysis is context-sensitive. *United States v. Frazier*, 129 F.4th 392, 405 (7th Cir. 2025).

Having viewed at least three autopsy photos, the court concludes that the probative value of this evidence is so low that Rule 403 concerns substantially override the relevancy. The cause of Cox's death is not in dispute nor is the fact that there was more than one shooter. The photos, on the other hand, are gruesome and would tend to inflame, creating a danger of unfair prejudice. Likewise, they would distract the jury from a fair and dispassionate consideration of the evidence. Of course, Defendants may still testify about and offer photos of the crime scene and what they discovered (which they argue is relevant to Reece's credibility), but the autopsy materials are excluded given the risk of unfair prejudice. Plaintiff's MIL No. 2 is granted.

## Plaintiff's MIL No. 3: References to "Convict" and "Murderer"

Plaintiff asks the court to bar "any description of Plaintiff before the jury as a 'convict,' 'convicted person,' 'murderer,' 'convicted murderer,' 'mobster,' or similar language." [Dkt. 261 at 9.] Defendants assert they have no intention of calling Plaintiff a "convict," nor to say that he currently stands convicted of murder, but they argue that they must be able to argue "Plaintiff was one of the people who was identified as a person who murdered [ ] Cox and, with respect to damages, argue that Plaintiff did in fact" murder him. [Dkt. 277 at 8.] The court agrees that Defendants should be able to argue that Plaintiff was identified as one of the people who murdered Cox, and to argue that Plaintiff was, in fact, one of the shooters. Plaintiff does not appear to argue otherwise. Counsel may not gratuitously refer to Plaintiff as a convict, murderer, and so on. So construed, MIL No. 3 is granted.

## Plaintiff's MIL No. 4: Bar Mention of the Probable Cause Ruling

Plaintiff argues that because none of the claims remaining for trial require proof of probable cause as an element, probable cause is irrelevant such that neither side should be permitted to argue that probable cause existed or was lacking for Plaintiff's arrest. MIL No. 4 is granted and this ruling is reciprocal. To address Defendants' concerns, it seems appropriate to instruct the jury on the availability of

pretrial detention damages and/or punitive damages (which is a function of the court's probable cause finding). If either party is uncertain whether a specific line of argument would cross the line, they may raise that issue during trial.

**Plaintiff's MIL Nos. 5: Connection to *Brown v. City of Chicago***

Plaintiff's seeks to bar testimony that Plaintiff, while working as a paralegal and investigator at the MacArthur Justice Center,[2] tampered with a witness's testimony in *Brown v. City of Chicago*, by offering that witness things of value to change her testimony before a deposition in August 2022. Defendants argue that this evidence is relevant to Plaintiff's credibility and to damages.

The court is familiar with the underlying issues concerning the witness at issue, and will not rehash the specifics here. Even assuming that testimony about Plaintiff's conversations with the witness in *Brown* clears the evidentiary hurdles of Rule 404(b), 608(b) and 801, Rule 403 concerns substantially outweigh relevancy. Any probative value the testimony might have on Plaintiff's credibility would waste time on a collateral issue—his conversations with an "outside" witness who has no connection to this case. This raises serious concerns about confusion of the issues and delay. Rule 403 requires that there be no mini-trials, and probing this subject, which occurred decades after the events at issue here, would devolve into a mini-trial. Because these concerns outweigh the probative value of the issue, MIL No. 5 is granted.

**Plaintiff's MIL No. 6: Bar Testimony Concerning Reece's Disorderly Conduct Charge.**

In 2001, Reece was stopped and arrested by a DuPage County Sheriff's deputy for driving on a suspended license and a registration violation; those charges were later dismissed. In 2003, Reece made a complaint with the DuPage County Sheriff's Office that accused the deputy involved in the events of 2001 of inappropriate touching. Following the complaint, Reece was later arrested after dash camera footage and other evidence established that her allegations were false. In February 2003, Reece was charged with attempted disorderly conduct; she pled guilty to the charge in 2004 and was sentenced to court supervision.

Even assuming, as Plaintiff argues, that the term of court supervision imposed in Reece's case means that she was not convicted within the meaning of state law, the court agrees with Defendants that Fed. R. Evid. 608(b) permits some questioning of her about these events. Under Rule 608(b), extrinsic evidence of Reece's false reporting is not admissible, but the court may permit cross-examination about the

---

[2]    To the extent Plaintiff testifies generally about his work at the MacArthur Justice Center, he should avoid references to working on wrongful conviction cases. This will alleviate the additional concerns Defendants have raised that this line of testimony improperly signals to the jury that Plaintiff was "wrongfully convicted." [Dkt. 277 at 12.]

lies if they are probative of the witness's character for untruthfulness. While extrinsic evidence may not be offered, the defense may cross-examine Reece about her dishonesty in connection with the incident because the events are probative of truthfulness. Nor is the court persuaded that evidence about the underlying events in 2001 should be excluded. Practically speaking, some limited amount of questioning about the underlying stop is permissible to contextualize what followed in 2003. Therefore, MIL No. 6 is denied.

**Plaintiff's MIL No. 7: References to Plaintiff's Criminal History**

Plaintiff asks the court to bar references to (1) his 1999 arrest for gambling for which he received three months of court supervision; and (2) his 2002 misdemeanor conviction for unlawful use of a weapon, for which he received eighteen months of probation, a conviction that was later vacated. There is no dispute that testimony about Plaintiff's 2004 conviction for possession of a controlled substance is admissible. [Dkt. 261 at 21.]

Federal Rule of Evidence 609 permits evidence of a criminal conviction for purposes of "attacking a witness's character for truthfulness," but where, as here, more than ten years have passed since the date of conviction, the conviction is admissible under Rule 609(b) only if its probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b)(1).

On the 1999 gambling conviction, the motion is granted. That conviction is not relevant to Plaintiff's character for truthfulness, particularly since it occurred years before the events at issue when Plaintiff was 19 years old.

Defendants argue that the 2002 misdemeanor conviction for unlawful use of a weapon is relevant to show Plaintiff's familiarity and knowledge of firearms, and because he previously testified that he has never possessed a gun, including as a prior bad act under Rule 404(b). [Dkt. 277 at 24-26.] On the former point, while prior bad acts can be admissible to prove knowledge under Rule 404(b)(2), evidence of Plaintiff's gun possession in 2001 is only loosely probative of a shooting a full year later. [3] As to the latter argument, the court agrees that given this circumstance, Plaintiff's conviction is relevant to character for truthfulness. In a case like this one where credibility is a critical factor, the probative value is high in the context of the prior testimony, and it substantially outweighs any prejudicial effect under Rule 403. This particular conviction—a misdemeanor that resulted in a sentence of probation and

---

[3] The court cautions, however, that it will not permit improper propensity questioning or arguments—that because someone committed one crime in the past, he or she is more likely to be aware of or participate in the commission of other crimes in the future. *United States v. Gomez*, 763 F.3d 845, 852-853 (7th Cir. 2014). That is inadmissible propensity evidence. Fed. R. Evid. 404(b)(1).

that was later vacated—is not likely to inflame.[4] MIL No. 7 is granted in part and denied in part.

**Plaintiff's MIL No. 8: Bar Reference to Appellate Court Decisions and Other Rulings**

Plaintiff moves to bar references to: (1) the state appellate court's affirmation of his conviction; (2) the subsequent denials of his petitions for habeas relief; and (3) the prior court's assessment of the credibility of witnesses.

As to the first two categories, the court reserves final ruling on the full scope of what is and is not admissible until closer to trial. As a general matter, the court agrees that the parties may not offer evidence of any prior rulings or factual findings made by the state appellate court, the Illinois Supreme Court or in the federal habeas proceedings, including on appeal. As discussed below, *see* Defendants' MIL No. 23 *infra*, a stipulation or jury instruction (or both) is the preferable way to address this topic. The issues for the jury to decide at trial are different than the decisions made by various courts and introducing this information risks confusion of the issues.

As to the last category—the trial judge's assessment of witness credibility—Plaintiff's argument appears focused on the following statement by the trial judge when making his finding of guilt at trial: "[a]s to Miss McDowell and Miss Reece, I am struck by the level of certainty that they showed while testifying as to the identity of the second shooter." "Both witnesses withstood an extensive and vigorous cross examination" and "[t]he identification procedures that were described during the course of this trial, the Court finds were in no way suggestive in nature, and that they were conducted in an almost pristine manner." [Dkt. 178, at ¶ 117.] Defendants argue that the outcome of the criminal trial rested in part on the trial judge's credibility assessment of certain witnesses, "which is important for the jury here to have, not only for assessing the effect the alleged fabricated and withheld evidence had or would have on the verdict [], but also because the trier of fact is in the best position to assess credibility of the witnesses testifying in front of it." [Dkt. 277 at 31.]

To prevail on a *Brady* suppression claim, a plaintiff must prove that (1) the nondisclosed evidence is favorable to him; (2) the evidence was concealed by the officer; and (3) the concealed evidence resulted in prejudice. *Jones v. York*, 34 F.4th 550, 559 (7th Cir. 2022). A plaintiff cannot show suppression by a police officer if the prosecution was aware of the exculpatory evidence; police officers "discharge their *Brady* duty by turning over exculpatory evidence to the prosecutor." *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022). A *Brady* violation "only exists when suppressed evidence is material, meaning that 'there is 'a reasonable probability' that the outcome would have been different if the evidence had been disclosed." *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022).

---

[4]    Plaintiff does not argue that the vacated conviction falls within Rule 609(c).

To that end, the trial judge's assessment of what he found persuasive following his in-person observation of McDowell and Reece's testimony at the criminal trial is relevant to issues for the jury to decide—whether there is reasonable probability that the outcome would have been different and the effect that the alleged fabricated and withheld evidence had and would have had on the outcome. Plaintiff's MIL No. 8 is denied as to (3) and reserved as to (1) and (2).

## Plaintiff's MIL No. 9: Criminal Trial Strategy

Plaintiff seeks to bar references to strategic decisions made by his counsel at trial, including trial counsel's decision to withdraw a motion to suppress the eyewitness identifications and his failure to present certain alibi witnesses at trial. Plaintiff argues that he relied on his trial counsel to make appropriate strategic decisions, and allowing evidence or argument about what trial counsel failed to do is irrelevant and likely to confuse the jury.

Defendants argue, and the court agrees, that withdrawing the motion to suppress and declining to present alibi witnesses is probative of whether the Officers fabricated or suppressed Reece's identification. Trial counsel's decision not to present additional alibi witnesses, like his decision to withdraw the motion to suppress the identification, makes it arguably less likely that the Officers fabricated or coerced Reece's identification. And the information is relevant to causation. *Blackmon*, 132 F.4th at 526. Nor are the circumstances surrounding trial counsel's decisions unfairly prejudicial under Rule 403. Plaintiff is free to argue that he played no role in these decisions, but allowing the jury to hear about them is probative and not substantially outweighed by any unfair prejudice. Plaintiff's MIL No. 9 is denied.

## Plaintiff's MIL No. 10: IDOC Calls

*Calls 2, 3, 4 and 6.* These recorded calls are between Plaintiff and his mother discussing affidavits for potential use in his post-conviction proceedings in 2013 and 2014. If Plaintiff presents alibi witnesses at trial, then the court agrees that the calls are generally relevant to when the affidavits were created and whether any affidavit may have been "backdated. "

*Calls 5 and 13.* These recorded calls relate to Plaintiff's dealings with a private investigator about "the lady that testified against him," making them relevant. Though Plaintiff argues that the calls have no probative value (because they refer to McDowell) and carry a risk of juror confusion (because there is nothing improper about paying an investigator to find a witness), there is no way to tell from the calls themselves whether Plaintiff is referring to McDowell or Reece, as Defendants note.

*Calls 1 and 10.* Plaintiff spoke to two of his alibi witnesses, so assuming he presents alibi witness evidence at trial, the calls are relevant and admissible.

*Calls 7, 8, 9, 11 and 12.* Calls 7, 8 , 9 and 12 are excluded on Rule 403 grounds. Defendants argue that the calls are "probative of Plaintiff's guilt in the murder of Tony Cox," but the probative value is low. At best, Plaintiff makes passing references to Cox and "killing." In Call 12, Plaintiff spoke about an unrelated accidental shooting involving his brother and a pellet gun. Even if Defendants could clear the relevance bar, Rule 403 concerns would substantially override the relevancy.

Lastly, in Call 11 Plaintiff said "sometimes when I say I don't remember things I be lying," which Defendants say is relevant to Plaintiff's credibility and probative of any claim that Plaintiff has never lied. But as Plaintiff points out, the proposed clip appears to be taken out of context—Plaintiff is speaking to Laura King about their relationship and not about the events at issue here. As above, the relevance of any "admission" in the call about lying is slight and overborn by the risk of confusion.

These calls are excluded on Rule 403 grounds but these rulings are without prejudice to reraising the issues of authenticity, foundation, and hearsay as to specific evidence at trial. This motion is granted in part and denied in part.

## Plaintiff's MIL No. 11: Witnesses' Criminal History

Plaintiff moves to bar evidence of third-party witnesses' criminal history.

*Antoinette Leavy, Judy Brengettcy, Monique Carr, Selena Leavy, Sheryce Crowder* and *Teresa Martin.* To the extent these witnesses' criminal histories consist only of arrests and not a conviction, the arrests are not admissible for impeachment purposes under Rule 609(d). *See Jordan v. City of Chicago,* 2011 WL 6119147, at *1 (N.D. Ill. Dec. 8, 2011); *see also United States v. Sanchez,* 2009 WL 5166230, at *9 (N.D. Ill. Dec. 22, 2009) ("arrests absent convictions and convictions for minor offenses, standing alone, are generally not admissible for impeachment.")

*Laushun Melton.* Melton has three arrests but also has two felony convictions: she was convicted in 2009 of theft and received 2 years' probation; and she was convicted in 2013 of identity theft, for which she received a fine and probation. Though ten years have passed since these convictions, they are admissible under Rule 609(b) if the probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b). These convictions are relevant to character for truthfulness—both involve crimes of dishonesty (whatever the circumstances), thus increasing their probative value. This is especially true because the credibility of alibi witnesses at the time of Cox's murder is of central importance. Plaintiff's MIL No. 11 is granted in part and denied in part.

DEFENDANT'S MOTIONS

## Defendants' MIL No. 1: Other Lawsuits and Disciplinary History

Defendants ask the court to exclude evidence of disciplinary records, training records, lawsuits, and citizen complaints about the Defendant Officers as propensity evidence under Rule 404(b). Rule 404(b)(1) describes prohibited uses of evidence of other crimes, wrongs, or acts such as to prove a person's character to show that on a particular occasion the person acted in accordance with the character. However, that evidence may be "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

 Because the exact nature of the CR files and prior lawsuits remains unclear, the court declines to bar reference to all of the Defendants' entire disciplinary history and related materials. Final ruling on this motion is otherwise reserved. The court will exclude or limit evidence that is likely to be taken as propensity evidence unless there is a valid non-propensity reason to introduce it and it is not excludable under Rule 403. Plaintiff may attempt to offer such evidence if Defendants open the door or there is a non-propensity purpose. If so, Plaintiff should move to admit the evidence out of the hearing of the jury.

## Defendants' MIL No. 2: Violations of Internal Rules

Defendants move to bar references to any violations of internal CPD rules, regulations, orders, policies or procedures, including policies concerning body-worn cameras, use of force, and preliminary investigations. The record, however, is not sufficiently developed for the court to make a firm ruling. Defendants are correct that a violation of internal policy does not equate to a constitutional violation, and introducing evidence about such policies could confuse the jury. Still, evidence of policy violations can be admissible in some circumstances. *See United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("If, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully.")

Plaintiff offers several reasons why policy violations might be factually relevant to the issues for trial, including what steps were taken to conceal misconduct and Defendants' potential failure to document parts of their investigation. Accordingly, the policies have "factual relevance that steers clear of the legal principle that divorces federal constitutional violations from violations of local directives." *Watson v. Fulton*, 2022 WL 21296130, at *5 (N.D. Ill. Feb. 23, 2022). The motion is granted insofar as Plaintiff cannot argue that the violation of a Chicago directive

9

amounts to a violation of the Constitution. Otherwise, there is not enough detail to resolve the issue now.[5] Defendants' MIL No. 2 is granted in part.

### Defendants' MIL No. 3: Thoroughness of Investigation

Defendants move to exclude evidence concerning how thoroughly (or not) they investigated Cox's murder, noting that they were under no obligation to continue to investigate after they had probable cause to arrest. True enough. For most of the claims, however, Defendants' state of mind is relevant and ignoring a promising lead is probative of whether Officers prematurely made up their minds about Plaintiff's guilt, which in turn could be relevant to whether they knowingly fabricated or suppressed evidence. As Plaintiff argues, the thoroughness of the investigation by itself does not amount to a constitutional violation, but investigative failures may still be probative of intent, motive and damages. Finally, if Defendants offer evidence to show that they believed Plaintiff was guilty based on certain investigative steps, Plaintiff can rebut that account by pointing out holes in the investigation. Defendants' MIL No. 2 is denied.

### Defendants' MIL No. 4: Street Files or Other Withheld Evidence

Defendants ask the court to bar evidence and argument relating to an inference that there were secret files—such as "street files"—or that any Defendant Officer withheld documents in a secret file or "street file," arguing that discussing street files would be highly prejudicial and of no probative value. Plaintiff responds that he will not claim that there are "street files" or other secret documents, but he should not be precluded from introducing evidence that inadequate or misleading documents relating to witness interviews were "missing from, or not included with," the official investigative file. [Dkt. 276 at 27.] The motion is granted. The court agrees that references to "street files" runs afoul of Rule 403 to the degree that it implies without evidence that officers routinely kept material information secret from prosecutors and defense attorneys. Plaintiff may elicit, however, testimony along the lines he describes, that is, evidence probative of the Officers' intent and knowledge to fabricate inculpatory evidence and suppress exculpatory evidence. But express references to "street files" or anything similar are prohibited. Defendants' MIL No. 4 is granted.

### Defendants' MIL No. 5: Damages for Pretrial Detention

Defendants seek to bar Plaintiff from arguing that he should recover damages for approximately 15.7 years he spent in custody, which includes approximately two years he spent in pre-trial custody awaiting trial. *See, e.g., Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ("The injury of wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment, not the Due Process Clause."); *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020). Plaintiff does not dispute this position, other than to clarify that the argument should not limit his

---

[5]     The court will address arguments related to Dennis Waller in its *Daubert* rulings.

presentation of damages evidence relevant to his innocence. The court agrees that Plaintiff may present evidence predating the date of his conviction, and the jury will be instructed on how to properly consider this evidence, including that Plaintiff may not recover for damages arising from pre-trial detention. Therefore, MIL No. 5 is granted.

## Defendants' MIL No. 6: Lack of Probable Cause

Defendants seek to bar Plaintiff from arguing that the Officers lacked probable cause to arrest, detain, and prosecute him. As already discussed, Plaintiff agrees not to litigate the issue of probable cause and does not oppose this motion so long as he is not barred from arguing his innocence, or that there was a constitutional violation entitling him to damages. MIL No. 6 is granted and this ruling is reciprocal.

## Defendants' MIL No. 7: Passage of Time

Defendants move to bar evidence or argument relating to the amount of time that has passed following Plaintiff's post-conviction relief and the filing of this lawsuit as well as the upcoming trial, arguing that they do not bear responsibility for the time it took to respond to pleadings, conduct discovery, resolve summary judgment, appeal the denial of qualified immunity, or prepare the case for trial. Plaintiff responds that he does not intend to argue that Defendants delayed these proceedings or are to blame for the passage of time between the filing of the civil complaint and the upcoming trial, but that he should be allowed to argue that he has been "waiting for this day" as a result of his wrongful conviction, and that this trial has been a "long time coming."

Defendants are correct that they were not responsible for the length of the trial or any delays, and there is a risk of unfair prejudice if the jury is given the impression that the trial took "too long" or there were unwarranted delays. The motion is granted with the caveat offered by Plaintiff, that is, he may testify about the length of his incarceration and how that long period of time affected him because this testimony is relevant to damages. Nor will the court categorically bar specific phrases like those described in the motion. Defendants' MIL No. 7 is granted to the extent described.

## Defendants' MIL No. 8: Undisclosed Witnesses or Opinions

Plaintiff may seek to call family members as it relates to damages. Plaintiff argues that his disclosure of these witnesses through his 2021 deposition testimony "obviated the need to update his Rule 26(a) disclosures," and that even if the names should have been formally disclosed through a formal Rule 26 submission, failure to provide the names of family members only requires barring the witnesses if the failure was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c). The court reserves ruling on this motion, if such a ruling becomes necessary based on any witness Plaintiff elects to actually call.

**Defendants' MIL No. 9: Lay Witness Testimony**

Defendants seek to bar Plaintiff from testifying about medical or mental health conditions that is beyond the realm of lay witness testimony. The parties agree that Plaintiff may testify about his physical and emotional injuries under Federal Rule of Evidence 701. Defendants' MIL No. 9 is granted.

**Defendants' MIL No. 10: Suggesting False Testimony at the Criminal Trial**

Defendants seek to bar Plaintiff from arguing that the Defendant Officers lied from the witness stand at the underlying criminal trial when they testified that Reece positively identified Plaintiff as one of the shooters. Because trial witnesses have absolute immunity for their prior criminal trial testimony, Defendants say, allowing Plaintiff to argue that the Officers lied would be substantially more prejudicial than probative.

The motion is denied. It is true that police officers have absolute immunity from suit under § 1983 for giving perjured testimony at a criminal trial. *Briscoe v. LaHue*, 460 U.S. 325 (1983); *Austin v. Cook Cnty.*, 2024 WL 3649022, at *2 (7th Cir. Aug. 5, 2024) Here, though, arguments or testimony concerning false or misleading testimony at the criminal trial have factual relevance, even if perjured testimony from the witness stand, all on its own, could not give rise to a § 1983 violation. *Walker v. City of Chicago*, 2025 WL 343471, at *3–4 (N.D. Ill. Jan. 30, 2025). Indeed, for Plaintiff to pursue his argument that he is innocent or that suppressed or fabricated evidence caused his conviction, he must necessarily probe the Officers' credibility, which includes cross-examination on whether prior testimony was untruthful or misleading. Because the probative value of this testimony is not outweighed by the risk of unfair prejudice, the court declines to exclude it.

Nor must the testimony be excluded under Rule 404(b). Plaintiff, as the proponent of such evidence, has established how eliciting testimony about whether the officers lied at a prior proceeding is relevant to a specific purpose other than the person's character or propensity to behave in a certain way, here, knowledge, intent and motive. *Gomez*, 763 F.3d at 852–53. Evidence tending to show that the Defendants lied from the witness stand supports the inference that they intentionally fabricated identification evidence and suppressed that identification. Because there are permissible purposes for the testimony established through a chain of reasoning that does not rely on propensity as contemplated by Rule 404(b), Defendants' MIL No. 10 is denied.[6]

---

[6]    Defendants should propose an appropriately "customized limiting instruction" to guard against a propensity use of this testimony. *United States v. Mireles*, 116 F.4th 713, 726, n.4 (7th Cir. 2024).

**Defendants' MIL No. 11: Burden-Shifting**

The motion is granted as unopposed.

**Defendants' MIL No. 12: Misconduct by Non-Defendants**

Defendants seek to bar Plaintiff from offering any evidence, testimony, or argument that non-defendants to this lawsuit committed misconduct in the underlying investigation into the Cox murder, arguing that this line of examination is irrelevant and unduly prejudicial. Plaintiff responds that he intends to offer evidence about the actions and inactions of non-defendants who were involved in the investigation, but he agrees that he cannot and will not argue that the misconduct of non-defendants imposes liability on those non-defendants. Defendants' MIL No. 12 is granted.

**Defendants' MIL Nos. 13 and 19: "Sending a Message" or Jurors as "Guardians of the Community."**

Defendants seek to bar Plaintiff from arguing that (a) the jury should punish, admonish or send a message with their verdict or damages award to the City of Chicago or CPD; or (b) asking the jury to be the "guardian of the community." Defendants' MIL Nos. 13 and 19 are granted as unopposed.

**Defendants' MIL No. 14: Failure to Record Interviews**

Defendants move to exclude all evidence or argument relating to the absence of electronic recordings of interviews during the Cox murder investigation, noting that recording police interrogation interviews was not required in 2002, either under state law or CPD policy. The motion is denied. As Plaintiff points out, the absence of state law or CPD policy does not make the lack of electronic recordings irrelevant. To the contrary, a recording is relevant to the fabrication and suppression claims in that recordings may have corroborated one version of events instead of another. In this way, the absence of a recording is just as relevant as if a recorded interview existed. The circumstances surrounding a lack of recordings is also relevant to state of mind, particularly in the context of the fabrication claim. Defendants are, of course, free to explain that neither CPD policy nor state law required them to record interviews, but the line of questioning is relevant and not unduly prejudicial under Rule 403. Defendants' MIL No. 14 is denied.

**Defendants' MIL No. 15: Certificate of Innocence**

Defendants move to bar Plaintiff from mentioning his certificate of innocence ("COI"). They argue that the COI is not relevant because none of Plaintiff's remaining claims require him to prove that his prosecution was favorably terminated. *Cf. Patrick*, 974 F.3d at 832 ("The judge admitted the certificate of innocence largely because he concluded that it was highly relevant to Patrick's case—in particular, to

his malicious-prosecution claim. Under Illinois law a plaintiff in a suit for malicious prosecution must prove not only that his conviction was vacated but that the prosecution was favorably terminated in a manner indicative of innocence.") (citation omitted).

Plaintiff agrees that none of his remaining claims require a showing that his prosecution was favorably terminated, but he argues that the COI is relevant and admissible at trial because Defendants will pursue their theory that Plaintiff is guilty of Cox's murder. [Dkt. 276 at 46.] Relatedly, Plaintiff argues that jurors must decide whether Defendants fabricated or concealed material evidence, "neither of which will require the jury to decide whether [Plaintiff] is guilty or innocent." [Dkt. 276 at 50.] According to Plaintiff, because Defendants will argue that Reece's testimony, even if fabricated, was immaterial to his conviction in light of McDowell's testimony, the COI is proper rebuttal evidence. He also stresses that a jury may award more damages to an innocent plaintiff, making the COI even more probative.

The majority of cases on which Plaintiff relies are those in which at least one claim required proof of "favorable termination." *See, e.g.*, *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 745–46 (N.D. Ill. 2015); *Chatman v. City of Chicago*, 2018 WL 11426432, at *1 (N.D. Ill. Oct. 11, 2018); *Harris v. City of Chicago*, 2018 WL 2183992, at *3 (N.D. Ill. May 11, 2018); *Brown*, 2023 WL 2640317, at *1–2; *Gray*, 2023 WL 7092992, at *11–12. Here, by contrast, since none of Plaintiff's claims require him to show favorable termination, the reasoning articulated in those cases is less persuasive.[7]

The Seventh Circuit has explained that COIs are not "categorically inadmissible," and acknowledged that admitting one into evidence at trial may be permissible despite the fact that it "carries a risk of unfair prejudice if misunderstood," including the possibility of confusing the issues or misleading the jury. *Patrick*, 974 F.3d at 833. The primary purpose of a COI "is to remove legal obstacles that prevent a wrongly convicted person from receiving relief in the Illinois Court of Claims." *Patrick*, 974 F.3d at 833 (citing 735 ILCS 5/2-702(a)). The statute expressly provides that "[t]he decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a *res judicata* effect on any other proceedings." § 5/2-702(j). "The admissibility calculus should be weighed with care." *Patrick*, 974 F.3d at 833.

---

[7]    It is true that *Smith v. City of Chicago* permitted the plaintiff to admit his COI even though the claim requiring proof of favorable termination—malicious prosecution—had been dismissed at summary judgment. 2025 WL 1744919, at *23–24 (N.D. Ill. June 24, 2025). *Smith* reasoned that under Rule 403, the COI was admissible because the officers would argue that "Smith is guilty of the underlying crimes and Smith, in turn, intends to argue his innocence." *Id.* The court respectfully disagrees with the reasoning *Smith* for the reasons discussed above.

Here, Plaintiff intends to argue that the COI is legal, conclusive proof of factual innocence. [Dkt. 276 at 52 ("The COI *is* powerful evidence and the justice system *has* spoken by awarding Mr. Blackmon a COI.") (emphasis in original).] The court must carefully weigh, then, whether the COI's probative value as to actual innocence is outweighed by Rule 403 considerations of delay, confusion and undue prejudice. On balance, the court concludes that they are.

First, there is delay and confusion. Admission of the COI would necessarily entail evidence and testimony about the certificate of innocence process, who participated in that process, and the considerations required by the judge who issued it. In response, Defendants would surely seek to establish that they had no ability to challenge whether the COI should issue. If Plaintiff can introduce the COI, Defendants will be able to substantively attack it, lengthening the proceedings on a side issue. This trial will already be a complex one, and the court intends to focus the jury's attention on the questions it must decide. Mixing in questions of why a state court granted a COI on state-law grounds adds much potential confusion. Broaching the topic of the COI raises new disputes and complexities that are unnecessary to decide the claims before the jury. These considerations substantially outweigh the COI's probative value.

Second, there are serious risks of unfair prejudice. The issue of guilt or innocence is hotly contested in this case and "favorable termination" need not be proven, so the prejudice to Defendants from the COI is exceptional. Put differently, the risk is quite high that the jury would take a judge's decision to issue a COI as conclusively establishing actual innocence—and ultimately misconduct in the criminal case. But the COI does not hold such weight. *See Patrick*, 974 F.3d at 833. Weighed against the risk that the jury will inevitably credit the COI in an impermissible way, including as having a *res judicata* effect, unfair prejudice tips in favor of exclusion. A limiting instruction is one way to "safeguard against the jury reading too much into the certificate without independently considering all the evidence." *Gray*, 2023 WL 7092992, at *12. On these facts, however, the court concludes that a limiting instruction is not the most effective way to eliminate the substantial risk that with the COI, the jury will approach the trial as one about damages on the mistaken belief that innocence has already been decided by a judge.

Finally, as to damages, there is no doubt that guilt or innocence is relevant to damages in a § 1983 case. *Parish v. City of Elkhart*, 702 F.3d 997, 1001 (7th Cir. 2012). And though a jury may award more damages to an innocent plaintiff, the court is not persuaded that admitting the COI overcomes the unfair prejudice and confusion concerns articulated above. To be sure, Plaintiff will offer evidence of his innocence. That will include his own testimony that he is innocent and the pain and suffering he experienced as a result of his conviction and lengthy prison sentence for a crime he maintains he did not commit. The jury will also hear that after he was convicted, his conviction was vacated and that the State declined to retry him. His

15

ability to argue innocence makes the probative value of the COI low on the question of damages when unfair prejudice considerations are factored in.

On balance, concerns of delay, confusion and unfair prejudice substantially outweigh whatever probative value the COI has. The COI is therefore excluded under Rule 403.[8]

## Defendants' MIL No. 16: Suggestive Lineup Procedures

Defendants seek to exclude any evidence or argument regarding "suggestive lineup procedures" based on the Seventh Circuit's determination that they are entitled to qualified immunity. The court agrees with Plaintiff, however, that that holding does not render the procedures used irrelevant. Qualified immunity bars liability based on the lineup procedures, but it does not bar evidence relevant to the surviving claims. True, the lineup procedures alone do not give rise to a constitutional violation, but those procedures remain probative of fabrication and suppression, particularly where Defendants intend to argue that McDowell's identification was not fabricated. If nothing else, this argument puts the reliability of at least McDowell's identification squarely at issue. Subject to an appropriate limiting instruction, MIL No. 16 is denied.

## Defendants' MIL Nos. 17 and 18: Abandoned Claims and Immaterial Topics

In ruling on summary judgment, the court observed that certain categories of suppressed evidence alleged in the Amended Complaint were abandoned by Plaintiff insofar as his arguments at summary judgment focused on suppression of Reece's fabricated identification. [Dkt. 202 at 29]. The summary judgment ruling also concluded that certain disputes of fact were immaterial to the summary judgment question. [Dkt. 202] Defendants now seek to exclude those categories from trial under the "law of the case" doctrine.

The motions are denied. The denial of a motion for a summary judgment "because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Switzerland Cheese Assn. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25 (1966). The categories or topics Defendants identify are relevant, *see* dkt. 276 at 63–64, and facts may still be relevant for trial even if they are not material to deciding summary judgment. *Cf. Martinez v. Clarian Health Partners, Inc.*, 2014 WL 545893, at *2 (S.D. Ind. Feb. 10, 2014) (describing how evidence that was not sufficient to create a material issue of fact at summary judgment may nevertheless be relevant for trial); *System Development Integration, LLC v. Computer Sciences Corp.*, 2012 WL 3204994, at *3 (N.D. Ill. Aug. 3, 2012) (evidence concerning the nature of the parties' relationship was admissible at trial

---

[8] Because Rule 403 bars admission of the COI on these facts, the court does not reach the question whether the COI is hearsay.

even though court had dismissed a breach of fiduciary duty claim because "evidence regarding the nature the parties' relationship is nonetheless relevant to SDI's quantum meruit claim"); *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705, 714 (N.D. Ill. 2009) ("The fact that an issue or claim may have been decided through summary judgment does not necessarily determine the admissibility at trial of the evidence that was related to that issue.") Defendants are free to make appropriate objections to this evidence at trial, where the court can consider them in context. Otherwise, Defendants' MIL Nos. 17 and 18 are denied.

**Defendants' MIL No. 20: Indemnification and City of Chicago as a Defendant**

Defendants move to bar references to the City of Chicago as a defendant. Because the indemnification and *respondeat superior* claims are derivative, and only trigger the City to pay compensatory damages if the jury finds liability against the Defendant Officers, Defendants argue "there is no reason to mention the City of Chicago as a defendant and doing so would only improperly signal to the jury that Defendant Officers would not have to pay any award of compensatory damages." [Dkt. 263 at 52-53.]

Testimony or argument about indemnification is excluded, and Plaintiff confirms he does not intend to offer evidence regarding indemnification unless the door has been opened. In general, courts exclude evidence of indemnification "out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendant[]—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); *see also Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible."). But if a defendant who benefits from a right to indemnification nevertheless claims an inability to pay damages, the defendant is deemed to have "opened the door" to evidence of indemnification. *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1030–31 (N.D. Ill. 2011) (plaintiff barred from "presenting any evidence or testimony that the defendants may be indemnified by the City of Chicago for damages. However, if the defendants plead poverty as to any damages, [plaintiff] may offer evidence of indemnification."). The motion is granted to this extent.

The motion is denied to the extent Defendants request to remove the City of Chicago from the case caption and verdict form. The City is still a defendant in this case and the court does not agree that references to the City should be stricken from the case documents, particularly when a modified version of pattern instruction 7.01 will do. *See Jones v. City of Chicago*, 2017 WL 413613, at *6 (N.D. Ill. Jan. 31, 2017); *Bruce v. City of Chicago*, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011) ("At this time, the Court will not strike the City of Chicago from the case caption because Plaintiff has asserted a state law claim for respondeat superior against the City. The City is a party to the case and should remain in the case caption.") MIL No. 20 is granted in part and denied in part.

17

**Defendants' MIL No. 21: Wiretap Calls**

Plaintiff seeks to offer portions of eighteen wiretap calls at trial. Shortly after Cox's murder, in August 2002, law enforcement secured a wiretap on Richard "Vic" Arrigo's phone. Recall that Arrigo was the third eyewitness to Cox's shooting. During the investigation, Arrigo was shown a photo array and lineup featuring Plaintiff and Michael Davis, but Arrigo did not identify anyone. [Dkt. 178 ¶ 53; Dkt. 195 ¶ 114.]

In the designated portion of each call, Arrigo spoke with either a Defendant Officer, a family member, friend, or associate George Davis (a/k/a Boonie Black), who has been described as the then-leader of the New Breeds street gang. [Dkt. 263 at 55–56.] Defendants move to bar the calls on relevance, hearsay and Rule 403 grounds.

*Relevance.* Defendants argue that the calls are irrelevant and should be excluded because neither Reece nor her identification of Plaintiff as the shooter are ever directly discussed in the calls, nor do the calls speak directly to any attempt to fabricate or suppress evidence. According to Defendants, the calls focus on collateral matters such as Arrigo's opinions about the Officers; his recollection of the murder and his interactions with CPD during the investigation; and his business dealings with others including Boonie Black. Plaintiff disagrees, arguing that the calls are relevant in at least the following four ways: (1) they support Reece's credibility; (2) they provide evidence of the officers' intent to frame Plaintiff; (3) they demonstrate deviations from professional standards; and (4) they include statements relevant to Mr. Blackmon's innocence.[9]

Nearly all of the Calls clear the low bar for relevance.[10]  For example, Calls 220, 286, 296, 498 and 950[11] concern steps the Defendant Officers took (or did not take) during their investigation to identify the shooters. This includes, for instance, what Officers said to eyewitnesses like Arrigo concerning photo arrays and photo lineups. This inquiry, in turn, is relevant to identification, and ultimately relevant to the identification procedures used with Reece and McDowell. Because the calls are

---

[9]   The parties' briefs disagree about which Defendant Officer is speaking in certain calls. *Compare* Dkt. 263 at 59–60 (attributing certain calls to Schleder and others to Sanchez) *with* Dkt. 276 at 72–78 (assigning different speakers to various calls).

[10]   The court does not see the relevance of Call 1422. Although Defendant Jones is one of the speakers in the call, it is not clear who Jones and Arrigo are talking about, or how this call bears upon "deviations from professional standards." Nor does the court understand the relevance of Calls 543, 578, 652. At the final pretrial conference, the parties can explain their respective positions on these calls so that the court can make a final decision as to relevance.

[11]   The court needs more information about Call 1572. Defendants say this call is between Arrigo and Schleder.  [Dkt. 263 at 59.] Plaintiff says this call is between Arrigo and Sanchez, *see* dkt. 276 at 72, and that the call is relevant because Sanchez never interviewed Arrigo to pursue a potential lead after hearing that Arrigo wanted to talk about "something that's between you and me." [*Id.*] According to Plaintiff, this reveals an intent to frame Plaintiff and avoid discovering the actual shooter.

probative of the identification of Plaintiff and probative of whether evidence was fabricated or suppressed, they are relevant.

*Hearsay.* Plaintiff argues that the calls are admissible as (a) admissions of a party opponent under Rule 801(d); (b) offered for the effect on the listener and are non-hearsay; or (c) admissible under the residual exception to hearsay. The court addresses each category in turn.

*Calls as admissions of a party opponent.* Defendants do not dispute that in Calls 220, 286, 296, 498, 950, 1572 and 2059, one Defendant or another is speaking with Arrigo (or someone else) such that the party opponent exception of Rule 801(d)(2) applies to the Defendant's recorded statements. Fed. R. Evid. 801(d)(2)(A). Defendants argue, however, that *Arrigo's* statements made in response to the Defendant Officer are hearsay. [Dkt. 263 at 63 ("Plaintiff may argue that statements from Arrigo and/or Boonie Black are to be offered to provide context—even so, any such statements nonetheless are analyzed for whether they are offered for their truth.").] But the statements by Arrigo are not being offered for their truth; they are offered to provide context for a Defendant's statements, and thus are not hearsay. *United States v. Falls*, 960 F.3d 442, 445 (7th Cir. 2020) (interviewer's statements in recordings with a party "were offered to provide context for Falls's answers, not for their truth.") These calls are admissible.

*Calls as effect on listener.* Plaintiff seeks to offer Calls 543, 578, 652, 1014, 1382 for their effect on the listener, Defendant Jones. According to Plaintiff, these calls are "circumstantial evidence of Jones' intent to frame" Plaintiff in that Jones was "aware of evidence relating to who truly murdered Cox" and failed to closely investigate other suspects.

"Statements introduced to show their effect on the listener are not offered to prove the truth of the matter asserted and therefore are not hearsay." *United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022). A statement is offered to show an effect on the listener only if the listener heard and reacted to the statement, and if the "actual use" of the statement at trial was to demonstrate the listener's response, *Id*. (citing *United States v. Gaytan*, 649 F.3d 573, 579–80 (7th Cir. 2011); *Jones v. Basinger*, 635 F.3d 1030, 1042 n.2 (7th Cir. 2011). The court cannot say in the abstract whether this will be the way Plaintiff "actually uses" any of these calls until trial. But so long as this is the case, these calls are admissible because they are not hearsay.

*Calls under the residual exception.* The court considers several of the remaining Calls under Rule 807. Plaintiff argues that Calls 543, 578, 652, 989, 1014, 1319, 1320, 1322, 1332, 1382 and 2059 are all admissible under the so-called residual exception to the hearsay rule. This rule permits a statement that is otherwise hearsay to be admitted if two conditions are met: (1) the statement is supported by sufficient guarantees of trustworthiness; and (2) the statement is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through

reasonable efforts." Fed. R. Evid. 807(a)(1), (2). The purpose of Rule 807 is to ensure that "reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence." *United States v. Wehrle*, 985 F.3d 549, 555 (7th Cir. 2021). Courts must construe the Rule 807 requirements narrowly. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 233 (7th Cir. 2021).

Courts should consider the following non-exhaustive list of factors to determine a statement's trustworthiness as an element of the residual exception to the hearsay rule:

> the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify...; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability.

*United States v. Moore*, 824 F.3d 620, 622–23 (7th Cir. 2016). Finding the statement trustworthy is a prerequisite to admission. *Hernandez v. City of Peoria, Illinois*, 135 F.4th 517, 528 (7th Cir. 2025). Plaintiff bears the burden of proving this exception applies. See *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

The first trustworthiness factor—Arrigo's reputation for truthfulness—is, at best, inconclusive. Plaintiff relies on the fact that Arrigo was unaware that his conversations were being recorded. Yet, Plaintiff also notes that Jones and Cronin's affidavit in support of the wiretap application stated that the "Arrigo Wiretap was needed because it was unlikely Arrigo would be truthful and cooperative in the investigation." [Dkt. 276 at 69.] At bottom, neither party has presented evidence of Arrigo's reputation for truthfulness.

As to the second trustworthiness factor, Arrigo's calls were obtained via a wiretap so he was not aware that his calls were being recorded. *Fields v. City of Chicago*, 981 F.3d 534, 544 (7th Cir. 2020). While this certainly does not render his statements involuntarily, there is no dispute that he was not under oath, subject to cross-examination, or subject to penalty for perjury in the calls. In this way, the circumstances under which Arrigo made the statements was not the equivalent of a "rigorous cross-examination as contemplated under this trustworthiness factor." *Hernandez v. City of Peoria, Illinois*, 2022 WL 22624877, at *3 (C.D. Ill. Aug. 5, 2022) *aff'd Hernandez v. City of Peoria, Illinois*, 135 F.4th at 527-528. The factor weighs against the admission of Arrigo's statements.

The third trustworthiness factor—Arrigo's relationship to Plaintiff, the government, and his motivation for testifying—cannot be assessed on the present

record. The parties do not explain the relationship, and Arrigo's "motivations" for making the statements is difficult to assess in part because his calls were being surreptitiously recorded. Plaintiff argues that Arrigo had no incentive to lie about his experiences with Officers in "unguarded conversations when he was completely unaware of the covert wiretap" when speaking with friends and family, his landlord, his business partner, or with Boonie Black. [Dkt. 276 at 76 (citing *Bishop v. White*, 2023 WL 35157, at *9 (N.D. Ill. Jan. 4, 2023.).] Even assuming that Arrigo was unguarded in the calls, his motivations remain unknown. On this record there is no way to determine whether Arrigo's conversations "bear markers of reliability that are equivalent to" statements covered by Rule 803 or 804. *Moore*, 824 F.3d at 624.

The fourth factor—the extent to which Arrigo's testimony reflects his personal knowledge—weighs in favor of admission of his statements. The context of the calls demonstrates that the statements reflect Arrigo's personal knowledge, though the court observes that some portions of certain calls reflect speculation on Arrigo's part. The fifth factor also weighs in favor of admission in that there is no testimony suggesting that Arrigo ever recanted his statement.

Regarding the sixth factor, the existence of corroborating evidence, Plaintiff argues that Arrigo's statements that an officer "insisted one of the individuals photographed in the photo array was the shooter," corroborates Reece's anticipated testimony at trial. Plaintiff anticipates that Reece will also testify that she was also threatened by Officers that if she refused to identify Plaintiff at the criminal trial, her children would be taken away. According to Plaintiff, this corroborates Arrigo's statement that officers "threatened to throw Arrigo in the penitentiary for the rest of his life" after Arrigo said no one in the lineup was a shooter. [*Id.* at 74.]

From the court's perspective, these arguments explain why Arrigo's recorded statements are *probative*, but they do not provide *corroboration* for the circumstances Arrigo describes in the calls. As far as the court is aware, there is no evidence corroborating Arrigo's statement that Officers threatened to throw him in prison if he did not identify a photo, or that an officer told Arrigo that one of the photos in the array was the shooter. And while Plaintiff anticipates that Reece's testimony will align with some of the circumstances Arrigo describes in the calls about officers making threats and suggesting which photo to select, Reece's prior, sworn testimony has not been consistent. [Dkt. 202 at 20–26.] This factor weighs against admission of the calls.

The last factor, the reason for Arrigo's unavailability (his death), casts no doubt on the trustworthiness of his testimony.

Having considered the relevant factors, including that the residual exception is to be narrowly construed, the court concludes that Arrigo's statements in Calls 543, 578, 652, 989, 1014, 1319, 1320, 1322, 1332, 1382 and 2059 do not offer circumstantial guarantees of trustworthiness equivalent to those contemplated in the enumerated

Rules 803 and 804 hearsay exceptions. Though the statements were voluntary, they were not sworn, made under penalty of perjury, or subject to extensive questioning. And though probative, including of Reece's credibility, the statements are uncorroborated and Arrigo's motivations for making them are unknown.

Finally, even if the calls were admissible under the residual exception, the court agrees with Defendants that they pose significant dangers of confusing the issues and misleading the jury, even with a limiting instruction. Arrigo is not available to testify at trial and so *exactly* which officer or officers Arrigo was referring to in any particular call is unknown. To be precise, the court does not know whether he was talking about an officer who is a defendant or a non-defendant officer. In this way, the recorded statements are highly prejudicial because they could lead the jury to decide this case based on interactions with non-defendant officers and not on the conduct of the Defendant Officers. *Hill v. City of Chicago*, 2011 WL 3876915 (N.D. Ill. Sept. 1, 2011).

To sum up, Calls 220, 286, 296, 498, 950, 1572 and 2059 are relevant and admissible under Rule 801(d) as statement of a party opponent. Calls 543, 578, 652, 989, 1014, 1319, 1320, 1322, 1332 and 1382 are hearsay to which the residual hearsay exception does not apply. However, Calls 543, 578, 652, 1014 and 1382 are statements introduced to show their effect on the listener, not for their truth, and therefore are not hearsay, so long as the "actual use" of the statement at trial is to demonstrate the listener's response. This motion is granted in part and denied in part.

## Defendants' MIL No. 22: Reece's Deposition Testimony

Defendants move to exclude Reece's 2017 deposition testimony offered in *Blackmon v. Pfister*, 2018 WL 741390 (N.D. Ill. Feb. 7, 2018), the habeas proceeding that preceded this lawsuit. Defendants argue that because Reece's testimony occurred in a separate proceeding in which neither the Defendant Officers nor the City of Chicago were parties, her testimony should be barred under Fed. R. Evid. 804 if Reece does not appear at trial. Plaintiff states that Reece will testify at trial, so the court reserves ruling on this motion to a later date, if necessary.

## Defendants' MIL No. 23: Habeas Matters and Seventh Circuit Opinions

Defendants seek to bar opinions of the Seventh Circuit and the district court arising from Plaintiff's habeas proceeding, arguing that they are irrelevant, hearsay, and more prejudicial than probative under Rule 403. Plaintiff suggests, and the court agrees, that the parties should stipulate to a summary of the relevant information to avoid any potential prejudice. There is no question that the jury will require some context underlying the facts of this case; for example, an explanation about the events that followed Plaintiff's conviction that led to his release and this lawsuit. The statement should be neutrally phrased to convey only the relevant points. And while the court agrees that certain procedural information and outcomes as a result of the

22

habeas proceedings are relevant and admissible, the court is not prepared to admit the written opinions, which contain irrelevant information, legal conclusions, and other prejudicial material. Final ruling on this motion is reserved.

\*     \*     \*

As explained above, the Court rules on the parties' MILs as follows:

| Pl. Motion | Ruling | | Defs. Motion | Ruling |
|---|---|---|---|---|
| Pl's No. 1 | Granted. | | Defs' No. 1 | Denied. |
| Pl's No. 2 | Granted. | | Defs' No. 2 | Granted in part. |
| Pl's No. 3 | Granted. | | Defs' No. 3 | Denied. |
| Pl's No. 4 | Granted. | | Defs' No. 4 | Granted. |
| Pl's No. 5 | Granted. | | Defs' No. 5 | Granted. |
| Pl's No. 6 | Denied. | | Defs' No. 6 | Granted. |
| Pl's No. 7 | Granted in part. | | Defs' No. 7 | Granted. |
| Pl's No. 8 | Denied in part; reserved in part. | | Defs' No. 8 | Reserved. |
| Pl's No. 9 | Denied. | | Defs' No. 9 | Granted. |
| Pl's No. 10 | Granted in part. | | Defs' No. 10 | Denied. |
| Pl's No. 11 | Granted in part. | | Defs' No. 11 | Granted. |
| | | | Defs' No. 12 | Granted. |
| | | | Defs' No. 13 | Granted. |
| | | | Defs' No. 14 | Denied. |
| | | | Defs' No. 15 | Granted. |
| | | | Defs' No. 16 | Denied. |
| | | | Defs' No. 17 | Denied. |
| | | | Defs' No. 18 | Denied. |
| | | | Defs' No. 19 | Granted. |
| | | | Defs' No. 20 | Granted in part. |
| | | | Defs' No. 21 | Granted in part. |
| | | | Defs' No. 22 | Reserved. |
| | | | Defs' No. 23 | Reserved. |

Enter: 19-cv-767
Date: August 4, 2025

_____
Lindsay C. Jenkins